OPINION OF THE COURT
Arthur G. Pitts, J.
In this hybrid CPLR article 78 proceeding and action for declaratory and injunctive relief petitioner seeks a judgment declaring that Local Law No. 4 (1993) of Suffolk County (adding Suffolk County Administrative Code § A4-13) is illegal, invalid, null and void because it violates General Municipal Law §§ 100-a and 104-b (1); annulling the award by respondent County of Suffolk to respondent Sunrise Medical Laboratories, Inc. of a contract to provide medical laboratory services for the Suffolk County Department of Health on the basis that the award was made in violation of lawful procedure, was affected by error of law, and was arbitrary, capricious and an abuse of discretion; enjoining respondent County of Suffolk from performing any obligation or services pursuant to this contract; and directing respondent County of Suffolk to rebid the medical laboratory services contract or to reconsider the proposals made without regard for Local Law No. 4.
In November 2006, respondent County of Suffolk issued a request for proposals (RFP No. 06/23039) for a contract to provide medical laboratory services for the County. Petitioner Quest Diagnostics Incorporated and respondent Sunrise Medical Laboratories, Inc. submitted proposals in response to the RFR and upon review of the proposals, respondent County notified petitioner by letter, dated July 18, 2007, that it was the successful proposer and requested that petitioner contact the County’s Department of Law to enter into a formal contract. On that same date, respondent Sunrise was notified by the County that Quest was the apparent successful proposer on the RFP In response, respondent Sunrise commenced a CPLR article 78 proceeding* against the petitioner herein and the County alleging, inter alia, that the award of the contract to Quest would be in violation of the County’s local preference law (Local Law No. 4). The order to show cause, dated August 17, 2007 (Bivona, J.), bringing on the article 78 proceeding *946 contained a temporary restraining order enjoining the County from taking any action in furtherance of the laboratory services contract 06/23039 purportedly awarded to Quest and provided that such contract would not take effect pending the hearing and determination of the petition.
In October 2007, respondent County issued a new request for proposals (RFP No. 07/23194) for a contract to provide medical laboratory services for the County. Petitioner Quest, respondent Sunrise and a third laboratory, nonparty North Shore-LIJ Laboratories, submitted proposals in response to the new RFP By letter, dated December 17, 2007, respondent County notified petitioner that respondent Sunrise was the successful proposer on RFP 07/23194.
Petitioner Quest challenges respondent County’s determination to award laboratory services contract 07/23194 to respondent Sunrise on the basis that the County’s local preference law is illegal, null and void and on the basis that the County’s determination that respondent Sunrise was the successful proposer was arbitrary, capricious and unlawful.
“New York has a multitude of procurement statutes applicable to public entities, but the underlying purpose is uniform: to assure prudent use of public moneys and to facilitate the acquisition of high quality goods and services at the lowest possible cost [see, e.g., General Municipal Law § 100-a]” (Matter of New York State Ch., Inc., Associated Gen. Contrs. of Am. v New York State Thruway Auth., 88 NY2d 56, 67 [1996]).
Municipal contracts awarded without resort to competitive bidding, other than those exempted from such requirements pursuant to General Municipal Law § 103, are void and unenforceable (JLJ Recycling Contrs. Corp. v Town of Babylon, 302 AD2d 430 [2003]). In particular, there is an exception to competitive bidding requirements for contracts for services requiring specialized skills or training, including professional services or other services requiring technical expertise (Matter of Fawcett v City of Buffalo, 275 AD2d 954 [2000], lv denied 96 NY2d 701 [2001]; see also Trane Co. v County of Broome, 76 AD2d 1015 [1980]).
The court concludes that there is no merit to petitioner’s contention that the medical laboratory services contract between the County and Sunrise must be set aside as violative of the competitive bidding requirements of General Municipal Law § 103. Because the nature of the work covered by the subject contract required specialized services, it is not subject to statu *947 tory bidding requirements. Respondent County’s award of the contract to respondent Sunrise did not violate General Municipal Law § 103 (Zack Assoc., Inc. v Setauket Fire Dist., 12 AD3d 439 [2004]; see also Matter of Doyle Alarm Co. v Reville, 65 AD2d 916 [1978]), because the award of the laboratory services contract was governed by the provisions of General Municipal Law § 104-b.
General Municipal Law § 104-b provides that goods and services which are not required by law to be procured by political subdivisions pursuant to competitive bidding must be procured in a manner so as to assure the prudent and economical use of public moneys in the best interests of the taxpayers of the political subdivision, to facilitate the acquisition of. goods and services of maximum quality at the lowest possible cost under the circumstances, and to guard against favoritism, improvidence, extravagance, fraud and corruption.
To further these objectives, General Municipal Law § 104-b (1) requires the governing board of every political subdivision, by resolution, to adopt internal policies and procedures governing all procurement of goods and services which are not required to be made pursuant to the competitive bidding requirements of General Municipal Law § 103 or any other general, special or local law.
General Municipal Law § 104-b (2) requires that these policies and procedures contain provisions which, among other things:
“a. prescribe a procedure for determining whether a procurement of goods and services is subject to competitive bidding and documenting the basis for any determination that competitive bidding is not required by law;
“b. provide that . . . alternative proposals or quotations for goods and services be secured by use of written requests for proposals, written quotations, verbal quotations or any other method of procurement which furthers the purposes of this section;
“c. set forth when each such method of procurement will be utilized, taking into account which method will best further the purposes of this section and the cost-effectiveness of the method;
“d. require adequate documentation of actions taken in connection with each such method of procurement;
*948 “e. require justification and documentation of any contract awarded to other than the lowest responsible dollar offeror, setting forth the reasons such an award furthers the purpose of this section; and
“f. set forth any circumstances when, or types of procurement for which, in the sole discretion of the governing body . . . , the solicitation of alternative proposals or quotations will not be in the best interest of the political subdivision.”
General Municipal Law § 104-b (5) provides that the unintentional failure to fully comply with the provisions of General Municipal Law § 104-b shall not be grounds to void action taken or give rise to a cause of action against the political subdivision.
In Suffolk County, the policies and procedures required by General Municipal Law § 104-b are codified within chapter 708 of the Laws of Suffolk County. At sections 708-4 and 708-5 the County sets forth its procurement procedures for awarding contracts for consulting services and makes these procedures subject to the requirements of Local Law No. 4. In so doing, according to the petitioner, respondent County of Suffolk has run afoul of the New York State Constitution and the Municipal Home Rule Law.
The powers of the Suffolk County Legislature derive from New York State Constitution article IX (State of New York v County of Suffolk, 140 Misc 2d 482 [1988]). Article IX, § 2 (c) (ii) provides that “every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law . . . except to the extent that the legislature shall restrict the adoption of such a local law” (emphasis supplied; DJL Rest. Corp. v City of New York, 96 NY2d 91 [2001]). Article IX, § 3 (d) (1) defines a “[g]eneral law” as “[a] law which in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages.” In other words, a “general law” is one which applies to all municipalities within the State of New York (State of New York v County of Suffolk, supra).
To implement article IX, the Legislature enacted the Municipal Home Rule Law (DJL Rest. Corp. v City of New York, supra).
“Local governments have been delegated broad powers to enact local legislation consistent with the State Constitution and general State laws relating to the welfare of its citizens (see, NY Const, art IX, § 2; Municipal Home Rule Law § 10). The doctrine *949 of preemption represents a fundamental limitation on this delegation by prohibiting local legislation in an area that the State has clearly evinced a desire to preempt. Under this doctrine, even in the absence of an express conflict, a local law which regulates subject matter in a field which has been preempted by State legislation is deemed inconsistent with ‘the State’s transcendent interest,’ and is thus invalid. Such local laws, were they permitted to operate in a field preempted by State law, would tend to inhibit the operation of the State’s general law and thereby thwart the operation of the State’s overriding policy concerns.
“On the other hand, the mere fact that both the State and local governments seek to regulate the same subject matter does not, in and of itself, render the local legislation invalid on preemption grounds. In order for the preemption doctrine to prohibit local legislation in a particular area there must be an intent on the part of the State to occupy the entire field. That intent, however, need not be express; it may be implied from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area” (Ba Mar v County of Rockland, 164 AD2d 605, 612 [1991] [citations and internal quotation marks omitted]).
“ ‘Inconsistency’, within the context of defining the powers of local government vis-a-vis State government, is a term of art” (Matter of Penny Lane/E. Hampton v County of Suffolk, 191 AD2d 19, 23 [1993]).
“A local law is obviously inconsistent with a State law where there is an express conflict between the two. However, there need not be an express conflict between a State and local law to render the local law inconsistent, and, therefore, invalid. Indeed, inconsistency has been found where local laws prohibit what would be permissible under the State law or impose prerequisite additional restrictions on rights under State law, so as to inhibit the operation of the State’s general laws” (Ba Mar v County of Rockland at 614 [citations and internal quotation marks omitted]).
Applying the foregoing principles to the matter at hand, the court finds that Local Law No. 4 is not inconsistent with Gen *950 eral Municipal Law § 104-b. In enacting Local Law No. 4, the Suffolk County Legislature adopted the following statement of intent:
“This Legislature hereby finds and determines that millions of dollars worth of contracts for consulting services are expended by Suffolk County each year for specialized personal or professional services necessary to perform essential functions of Suffolk County government.
“This Legislature further finds that the current economic downturn being experienced by Long Island is adversely affecting local business through a reduction in business activity and a concomitant loss of jobs.
“This Legislature further finds and determines that many of these contracts are awarded to individuals or entities that are located outside both Suffolk and Nassau County.
“This Legislature also finds and determines that the award of such contracts to individuals or entities outside of both counties at a time when Suffolk County is experiencing an economic downturn and less economic activity than even neighboring Nassau County has achieved tends to exacerbate the economic difficulty currently experienced in Suffolk County.
“This Legislature also determines that the award of such contracts to individuals or entities located within Suffolk County and Nassau County would help promote local economic activity and thereby generate additional sales tax revenues which would alleviate fiscal and budgetary constraints currently being experienced by Suffolk County.
“Therefore, the purpose of this law is to limit the award of such contracts to individuals or entities located and doing business within Suffolk County and Nassau County when practical and with the best interests of the county and to promote the use of local businesses as county consultants so as to encourage increased economic activity on Long Island by putting county tax dollars to work at home.” (Local Law No. 4 § 1.)
The court acknowledges that local preference rules have been nullified when applied to the award of contracts subject to com *951 petitive bidding under General Municipal Law § 103 (see e.g. Associated Bldrs. & Contrs. v City of Rochester, 67 NY2d 854 [1986]; Matter of Warren Bros. Co., Div. of Ashland Oil & Ref. Co. v Craner, 30 AD2d 437 [1968]). The rationale of these cases being that a local preference law interferes with the statutory mandate that contracts be awarded to the “lowest responsible bidder.”
There are, however, no corresponding legal precedents nullifying local preference laws affecting contracts awarded by municipalities in accordance with General Municipal Law § 104-b. This is because General Municipal Law § 104-b does not mandate the award of contracts to the lowest responsible bidder, and instead, by its very terms, invites localities to formulate their own procedures and policies for the award of contracts which are in the “best interests” of the political subdivision. Clearly then, with respect to public contracts awarded under General Municipal Law § 104-b, the State Legislature did not intend to preempt the entire field regarding local public contracts which are not required to be competitively bid. Rather, the State Legislature afforded the municipalities a measure of discretion in determining what constitutes their best interests and recognized that their best interests may not always be limited to price alone. Nor does the court find Local Law No. 4 to be inconsistent with the provisions of General Municipal Law § 104-b; the Suffolk County Legislature, in its statement of intent, clearly articulated the socioeconomic benefits to the residents of Suffolk County of the award of such contracts to local businesses. As such, the court declares Local Law No. 4 to be a valid exercise of the County Legislature’s powers and is not void as unconstitutional or illegal.
Having determined that Local Law No. 4 is valid, the court next considers whether the subject medical laboratory services contract to respondent Sunrise may be sustained. “In a proceeding pursuant to CPLR article 78 to review the determination of a municipality, it is well settled that a court may not substitute its judgment for that of the board or body it reviews unless the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion” (Matter of Dreier v LaValle, 29 AD3d 790, 791 [2006] [internal quotation marks omitted], quoting Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 232 [1974]). The determination of respondent County to award the medical laboratory services contract to the *952 respondent Sunrise must be upheld so long as it is in accord with the law and has a rational basis (id.). The record supports the County’s determination that Sunrise’s proposal was superior to that of the other proposers. In particular, the affidavit by Michael Miner, Deputy Commissioner of the Suffolk County Department of Health, illustrates how the contract between the County and Sunrise is beneficial in terms of cost and also complies with the state and local procurement laws. In addition, the evidence on the record establishes that the County did not arbitrarily and capriciously award the subject contract to respondent Sunrise in violation of Local Law No. 4 § 4 (D) which prohibits the award of a consulting contract to a corporation which has reincorporated outside of the United States of America.
Petitioner’s cause of action for injunctive relief, having been rendered academic by the court’s finding herein, is dismissed as moot. The court has considered petitioner’s remaining claims and finds them to be without merit.
Submit judgment declaring Local Law No. 4 valid, dismissing the petitioner’s claims under CPLR article 78 and dismissing the petitioner’s claims for injunctive relief.

 The proceeding is entitled Sunrise Med. Labs., Inc. v County of Suffolk, Quest Diagnostics Inc., and Joseph Sawicki, Jr., in his official capacity as Suffolk County Comptroller, and is filed under Suffolk County index No. 07-23251.